UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BOBBY R.,

                            Plaintiff,

v.                                         5:23-CV-00590
                                          (MAD/ML)

COMMISSIONER OF SOCIAL SECURITY,

                            Defendant.
_____

APPEARANCES:                    OF COUNSEL:


HILLER COMERFORD          JUSTIN M. GOLDSTEIN, ESQ.
INJURY & DISABILITY LAW
 *Attorneys for Plaintiff*
6000 North Bailey Avenue
Suite 1A
Amherst, New York 14226

U.S. SOCIAL SECURITY ADMIN.     CANDACE BROWN CASEY, ESQ.
 *Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

**MIROSLAV LOVRIC**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION**</u>

     Plaintiff Bobby R. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") partially denying his application for Supplemental Security Income ("SSI").

(Dkt. No. 1.)  This matter was referred to me to prepare a Report and Recommendation to the

Honorable Mae A. D'Agostino, United States District Court Judge, pursuant to 28 U.S.C. §

636(b) and Local Rule 72.3(d). (Dkt. No. 4, 5.)  This case has proceeded in accordance with General Order 18.

Plaintiff has filed a motion for judgment on the pleadings, seeking remand solely for calculation and payment of benefits for the period of July 28, 2016 through March 1, 2022. (Dkt. No. 16.)  Defendant agrees that remand is appropriate due to errors at step five of the sequential analysis, but requests that the Court remand for further administrative proceedings to resolve the outstanding question of whether there are a significant number of jobs in the national economy that Plaintiff can perform. (Dkt. No.19-1.)  Plaintiff has opposed Defendants' requested remedy and reasserted his argument that remand for calculation and payment of benefits is the proper relief. (Dkt. No. 20.)

For the reasons set forth below, this Court agrees with Plaintiff and recommends the District Court grant Plaintiff's motion for judgment on the pleadings, deny Defendant's motion to the extent that it seeks remand for further administrative proceedings, and remand the Commissioner's decision for calculation and payment of benefits for the period of July 28, 2016 through March 1, 2022.

## I.    **PROCEDURAL HISTORY**

This case has a lengthy procedural history.  On July 28, 2016, Plaintiff protectively filed his SSI application alleging disability dating from April 2, 2013. (Administrative Transcript ("T.") 286-292.)  His application was denied initially on January 18, 2017. (T. 105-113.)  Plaintiff's request for a hearing was granted. (T. 159-165.)  On October 9, 2018, Administrative Law Judge ("ALJ") Jennifer Gale Smith held a hearing at which Plaintiff and vocational expert ("VE") Marissa Howell testified. (T. 60-92.)  ALJ Smith held a supplemental hearing on April 16, 2019 to receive the testimony of independent medical expert Dr. Jeffrey Hansen. (T. 94-98.)

Plaintiff, who was not represented at the time, failed to appear at this hearing. (T. 97.)  ALJ

Smith held a third hearing on August 8, 2019 at which Plaintiff, now represented by a non-

attorney representative, testified along with VE David A. Festa. (T. 33-58.)

ALJ Smith issued an unfavorable decision on August 28, 2019. (T. 7-28.)  The Appeals

Council denied Plaintiff's request for review on June 5, 2020. (T. 1-6.)  Plaintiff commenced an

action challenging the Commissioner's disability determination on August 4, 2020 in the

Northern District of New York.

Shortly after the Appeals Council denied review, Plaintiff filed a new application for SSI

benefits dated June 25, 2020. (T. 1672-1678.)  On December 9, 2021, ALJ Robyn L. Hoffman

issued an unfavorable decision, finding that Plaintiff did not have a severe impairment or

combination of impairments that significantly limits his ability to perform basic work activities.

(T. 1431-1442.)  Plaintiff requested review by the Appeals Council. (T. 1554-1556.)

On January 12, 2022, Senior United States District Court Judge Frederick J. Scullin

ordered remand for further administrative proceedings on Plaintiff's July 2016 SSI application.

(T. 1443-1467.)  Judge Scullin found that ALJ Smith's RFC determination was supported by

substantial evidence but also found that the Commissioner had failed to meet her burden at step

five of the sequential analysis to identify a significant number of jobs in the national economy

that Plaintiff could perform. (T. 1448-1466.)  In particular, Judge Scullin took issue with ALJ

Smith's reliance on VE Festa's testimony identifying six occupations that an individual with

Plaintiff's RFC could perform that, in the aggregate, totaled just over 11,000 available jobs in the

national economy. (T. 22, 51-55.)  Following precedent, Judge Scullin found that the low

number of nationally available jobs imposed an obligation on ALJ Smith to question the VE

regarding regional or local availability of those job titles. (T. 1466.) He remanded for further administrative proceedings to resolve the question. (*Id.*)

In an order dated August 30, 2022, the Appeals Council vacated ALJ Smith's August 8, 2019 decision, and remanded the case to ALJ Smith for "further proceedings consistent with the order of the court." (T. 1472.) In the same order, the Appeals Council vacated ALJ Hoffman's December 9, 2021 decision and remanded to ALJ Smith with instructions to "consolidate the current and subsequent claims files, associate the evidence, and issue a new decision on the consolidated claims." (*Id.*) The Appeals Council instructed ALJ Smith to "offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision." (T. 1473.)

On January 5, 2023, ALJ Smith held a telephonic hearing at which Plaintiff and VE Whitney Eng testified. (T. 1357-1390.) On January 20, 2023, ALJ Smith issued a partially favorable decision. She found that Plaintiff was not disabled for the period between his application date of July 28, 2016 and March 1, 2022, but that he became disabled on March 2, 2022 when his age category changed to an individual closely approaching advanced age. (T. 1343-1345.) Plaintiff commenced this judicial proceeding challenging ALJ Smith's January 5, 2023 decision on May 16, 2023. (Dkt. No. 1.)

## II.    **GENERALLY APPLICABLE LAW**

### A.    **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if

the record contains substantial support for the ALJ's decision.  *Rutherford v. Schweiker*, 685

F.2d 60, 62 (2d Cir. 1982).

> **B.    Standard for Benefits[1]**

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or

she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

*Id*. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments;  (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments;  (4) based on a "residual functional capacity"

---

[1]  The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III.   FACTS

Plaintiff was forty-four years old on his application date, and fifty years old on the date of ALJ Smith's most recent decision. (T. 286.)  He attended regular education classes before leaving high school without graduating, but subsequently obtained an equivalency diploma. (T. 317, 1364.)  At the time of his January 2023 hearing, Plaintiff lived with two of his children, ages thirteen and eight. (T.1367.)  He has a limited employment history that includes positions as a forklift operator and warehouse picker. (T. 47, 1711.)

Plaintiff has a history of back pain that is aggravated by extended sitting, standing, bending, or lifting. (T. 510, 1369-1370, 2368.)  Imaging reports from 2018 showed significant degenerative changes in the lower lumbar spine. (T. 1318-1319.)  He reported that treatment with pain medication, nerve blocks, and physical therapy had been unsuccessful. (T. 80, 510, 658, 1366, 2358.)  Intellectual testing suggested some learning difficulties, but Plaintiff testified that he was able to read, write, and perform simple math and had no difficulties learning new tasks in the workplace. (T. 786, 1373.)  He ascribed his inability to work solely to his back pain. (T. 1373.)

## IV.   JUDGE SCULLIN'S JANUARY 12, 2022 MEMORANDUM DECISION AND ORDER

In his January 12, 2022 Memorandum-Decision and Order, Judge Scullin considered Plaintiff's challenge to the RFC determination, the step five determination that there were jobs in significant numbers in the national economy that Plaintiff could perform, and the ultimate determination of disability. (T. 1443-1467.) Following a review of ALJ Smith's evaluation of the evidence related to Plaintiff's physical impairments, Judge Scullin found "that the ALJ properly considered the relevant factors, weighed the opinion evidence, and examined the records and testimony to find Plaintiff's physical RFC and that her conclusion regarding Plaintiff's physical RFC is supported by substantial evidence in the record." (T. 1461.) Conducting a similar review of her assessment of Plaintiff's mental health impairments, Judge Scullin found that ALJ Smith's mental RFC finding was supported by substantial evidence in the record that included "VE Festa's testimony, various medical opinions, and Plaintiff's daily activities." (T.1464.)

Given the centrality of the step five analysis to the arguments in this case, Judge Scullin's discussion of that issue is worth reciting in full:

> The ALJ then found, based on VE Festa's testimony, that Plaintiff could perform other jobs existing in significant numbers in the national economy, including waxer (with 998 jobs in the national economy), table worker (with 3,079 jobs in the national economy), stuffer (with 3,725 jobs in the national economy), laminator I (with 1,535 jobs in the national economy), polisher eye glass frames (with 1,786 jobs in the national economy), and charger II (with 7 jobs in the national economy), for a total of 11,130 jobs in the national economy. [record citation omitted] VE Festa did not provide any statistics regarding these jobs' availability in the regional or local economies. [record citation omitted] The ALJ continued to push VE Festa to provide her with jobs with a GED score of two in reasoning and one in language and math. [record citation omitted] The ALJ also pressured the VE who testified at the first hearing, VE Howell, by stating that she was "gonna need a few more [jobs] 'cause [she has] to get up to 10,000." [citation omitted] Ultimately, the ALJ reached the 10,000 national jobs threshold, but she

8

only did so after securing six job titles for which Plaintiff was qualified.  When there were such low numbers of relevant jobs in the national economy, courts tend to look to the regional numbers or local availability of those job titles, *see Terri G. v. Comm'r of Soc. Sec.*, No. 3:18-CV-0066 (CFH), 2019 WL 1318074, *11 (N.D.N.Y. Mar. 22, 2019) (Hummel M.J.); *Wayne M. v. Saul*, No. 3:20-CV-00465 (SALM), 2021 WL 1399777, *16-*17 (D. Conn. Apr. 14, 2021); however, VE Festa did not provide those numbers in this case.  The Court is therefore not convinced, based on the evidence in the record, that the Commissioner has met her burden and demonstrated that there exists a significant number of jobs available to Plaintiff in the national economy; and, accordingly, the Court remands this case to the Commissioner for further consideration, in particular regional numbers or local availability of the job titles on which the ALJ relied to reach her conclusion that there were a significant number of jobs in the economy that Plaintiff can perform. *See Terri G.*, 2019 WL 1318074, at *11; *Kathy H.*, 2020 WL 3960846, at *16.  *But see Vining v. Astrue*, 720 F. Supp. 2d 126, 136 (D. Me. 2010).

(T. 1465-1466.)

## V.    ALJ SMITH'S JANUARY 20, 2023 DECISION

Following the Appeals Council's consolidation and remand order, ALJ Smith first found that Plaintiff had not engaged in substantial gainful activity after the application date of July 28, 2016. (T. 1334.)  At step two, she found that Plaintiff has the following severe impairments: "herniated disc at L4-5 and L5-S1, a knee impairment, and borderline intellectual functioning." (*Id.*)  At step three of the evaluation, ALJ Smith found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment, including Listing 1.15 (Disorders of the Skeletal Spine), Listing 1.18 (Abnormality or a Major Joint), Listing 12.05 (Intellectual Disorder), and Listing 12.11 (Neurodevelopmental Disorders). (T. 1334-1336.)

Next, ALJ Smith found that Plaintiff could perform less than the full range of sedentary work since at least July 28, 2016. (T. 1336-1343.)  Specifically, she found that Plaintiff can frequently reach in all directions other than overhead; can occasionally reach overhead and

occasionally push and pull; can occasionally use foot controls; should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment. (T. 1336.)  She further found that Plaintiff should not climb ladders, ropes and scaffolds, balance, kneel, crouch, or crawl; can occasionally climb ramps and stairs and stoop; and should be able to stand for two minutes at half hour intervals before needing to switch positions. (*Id*.)  ALJ Smith also found that Plaintiff can stay on task at a workstation while changing positions; should have no concentrated exposure to respiratory irritants such as dust, odors, fumes, and gases, extreme hot and cold temperatures, and humidity; and can tolerate occasional exposure to vibrations. (*Id*.)  ALJ Smith further found that Plaintiff is able to perform a job with simple, routine, and repetitive tasks. (*Id*.)  Finally, ALJ Smith found that Plaintiff should use a cane for ambulation but retains the ability to carry small objects with his free hand. (*Id*.)

At step four, ALJ Smith found that Plaintiff had no past relevant work. (T. 1343.)  She then relied on the VE testimony at step five to find that, prior to March 2, 2022, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (T. 1344-1345.)  Specifically, the ALJ identified the representative occupations of addresser, document preparer, and polisher. (T. 1344.)  ALJ Smith next found that Plaintiff's age category changed on March 2, 2022, and that no jobs existed in significant numbers in the national economy that Plaintiff could perform from that date forward. (T. 1345.)  Accordingly, ALJ Smith found that Plaintiff was not disabled prior to March 2, 2022, but became disabled on that date and continued to be disabled through the date of her decision. (*Id*.)

## VI.    <u>ISSUES IN CONTENTION</u>

The parties agree that remand is appropriate but disagree about the scope of that remedy.

Plaintiff contends that the Court should remand for calculation and payment of benefits because ALJ Smith exceeded the narrow precepts of Judge Scullin's original remand order by reevaluating all five steps of the sequential process and modifying the RFC determination, instead of merely resolving the outstanding question of regional and local job availability. (Dkt. No. 16 at 16-21; Dkt. No. 20 at 7-9.)  In the alternative, Plaintiff argues that remand for calculation and payment of benefits is the proper remedy because the only representative occupations identified by VE Eng in January 2023 were either obsolete or existed in insignificant numbers at the national, regional, and local level. (Dkt. No. 16 at 21-25; Dkt. No. 20 at 2-6.)

The Commissioner contends that ALJ Smith complied with Judge Scullin's order and properly evaluated Plaintiff's disability claim in light of the consolidated claims applications and additional evidence, but that remand for additional proceedings is appropriate due to inconsistencies in the ALJ's questioning of the VE and potential unresolved conflicts with the Dictionary of Occupational Titles. (Dkt. No. 19-1 at 8-14.)  Although the Commissioner focuses on the step five determination, its requested remedy is broader as he seeks judicial instructions that "the ALJ should obtain additional vocational expert evidence; ensure that any conflicts between that evidence and the Dictionary of Occupational Titles are resolved; further consider the residual functional capacity, as warranted by any relevant updates to the record; offer the claimant a hearing, take any further action needed to complete the administrative record, and issue a new decision on the issue of disability prior to March 2, 2022." (*Id*. at 14.)

Based upon a review of the parties' arguments and the associated record, this Court agrees with the Commissioner that the law of the case did not preclude ALJ Smith from restarting the sequential evaluation process, in light of the consolidated applications for benefits and the additional evidence presented by Plaintiff.  Still, this Court recommends remand for

calculation and payment of benefits because the Commissioner has repeatedly failed to identify

jobs existing in significant numbers that Plaintiff could perform, despite an almost eight-year

process involving five administrative hearings, testimony from three vocational experts, and two

judicial proceedings.  The Commissioner's repeated failure to meet its burden at step five is

persuasive proof of disability that makes it unlikely that further administrative  proceedings

would serve any useful purpose.

Accordingly, this Court recommends that Plaintiff's motion for judgment on the

pleadings be granted, Defendant's motion for remand be denied to the extent it seeks further

administrative proceedings, and this case be remanded to the Social Security Administration

solely for the calculation and payment of benefits for the relevant period between July 28, 2016

and March 1, 2022.

## VII.    LAW OF THE CASE DOCTRINE

### A.    Legal Standards

"The regulation governing agency decisions after remand from federal court provides that

'[a]ny issues relating to your claim may be considered by the [ALJ] whether or not they were

raised in the administrative proceedings leading to the final decision in your case.'" *Thompson v.*

*Astrue*, 583 F. Supp. 2d 472, 474 (S.D.N.Y. 2008) (citing 20 C.F.R. § 404.983).  However, the

"law of the case doctrine," which typically applies to administrative agencies on remand,

"prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions

made in earlier proceedings."  *Diana P. v. Saul*, No. 3:19-CV-593 (CFH), 2020 WL 3971536, at

*6 (N.D.N.Y. July 14, 2020) (quoting *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997)).

Putting this rule into practice, a "district court's remand order will often include detailed

instructions concerning the scope of the remand . . . . Deviation from the court's remand order in

the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *See Sullivan v. Hudson*, 490 U.S. 877, 885 (1989).

To date, the Second Circuit Court of Appeals has not ruled on whether the law of the case doctrine applies to the social security disability administrative process after judicial remand, but the doctrine has been implemented by many district courts. *See Tanya W. v. Comm'r of Soc. Sec.*, No. 3:20-CV-510 (TWD), 2021 WL 4942092, at *6 (N.D.N.Y. Oct. 22, 2021) (summarizing cases). At the administrative level, "ALJs have acknowledged throughout the years that the remand instructions they receive from the federal district court are the law of the case." *See Gladle v. Astrue*, No. 7:12-CV-284 (NAM), 2013 WL 4543147, at *3 (N.D.N.Y. Aug. 27, 2013) (citations omitted).

Even with this rule in place, "in the absence of limiting instructions or court findings, the Commissioner may revisit on remand any issues relating to the application for disability benefits." *Thompson*, 583 F. Supp. 2d at 475. In addition, a claimant is free to introduce new evidence to support his or her disability claim, which the ALJ is bound to evaluate according to the sequential analysis. *See Marvin v. Colvin*, No. 3:15-CV-74 (GLS/CFH), 2016 WL 2968051, at *3 (N.D.N.Y. May 20, 2016) (explaining an ALJ is not bound by the law of the case when presented with compelling reasons such as new evidence). Thus, the law of the case has often been set aside for "cogent and compelling reasons" including "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008).

### B. Application

Plaintiff contends that ALJ Smith unlawfully ignored Judge Scullin's remand order by undertaking a completely new sequential analysis, resulting in a revised RFC and step five

determination that went well beyond the narrow instructions from the District Court to evaluate the regional and local job numbers for the six occupations identified by VE Festa at the August 2019 hearing. (Dkt. No. 16 at 17-21.)

To be sure, Judge Scullin's Memorandum-Decision and Order made explicit findings affirming ALJ Smith's August 2019 RFC determination, and only remanded for specific errors at step five. (T. 1462, 1464, 1466.)  Indeed, the ALJ acknowledged the narrow basis for remand, stating that "my last decision found sedentary and Judge Scullin seemed to say that was just perfect and the problem was I didn't get local or regional numbers." (T. 1361.)  Still, the ALJ left no doubt that she was departing from the letter of Judge Scullin's instructions, advising VE Eng that "I changed the hypothetical [RFC] a bit from what Judge Scullin said was appropriate." (T. 1379.)

These changes are readily apparent.  In her August 23, 2019 decision, ALJ Smith found that Plaintiff could perform less than the full range of sedentary work.  Specifically, she found

> the claimant can frequently lift up to 10 pounds, occasionally carry up to 10 pounds, and occasionally lift and carry between 11 and 20 pounds. The claimant can sit for six hours in an eight-hour day and for two hours at a time. The claimant can stand for four hours in an eight-hour day and for one hour at a time. The claimant can walk for two hours in an eight-hour day and for 30 minutes at a time. The claimant can frequently reach in all directions other than overhead and can occasionally reach overhead. The claimant can occasionally push, pull, and use foot controls.  He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl.  The claimant should not climb ladders, ropes, or scaffolds. The claimant should not work at unprotected heights, climb ladders, or work in close proximity to dangerous machinery or moving mechanical parts of equipment.  The claimant should have occasional exposure to extreme cold and vibrations.  The claimant can frequently operate a motor vehicle and come in contact with humidity, wetness, odors, fumes, gases, and extreme heat.  The claimant should not work in a noise environment above loud. He can perform simple routine repetitive tasks and should perform a job with a reasoning general education development (GED) of two and language and math GED of one.

(T. 15.)

ALJ Smith's January 20, 2023 RFC determination similarly found Plaintiff able to perform less than the full range of sedentary work but revised the specific description of his functional limitations.  Namely, she found Plaintiff can

> frequently reach in all directions other than overhead. The claimant can occasionally reach overhead and occasionally push and pull.  The claimant can occasionally use foot controls. The claimant should not work at unprotected heights or work in close proximity to dangerous machinery or moving mechanical parts of equipment.  The claimant should not climb ladders, ropes and scaffolds, balance as defined in the [Selected Characteristics of Occupations], kneel, crouch, and crawl. He can occasionally climb ramps and stairs and stoop. The claimant should be able to stand for two minutes at half hour intervals. He can stay on task at the workstation during the position change.
>
> The claimant should have no concentrated exposure to respiratory irritants such as dust, odors, fumes and gases, extreme hot and cold temperatures, and humidity. The claimant should have occasional exposure to vibrations. The claimant should be able to perform a job with simple, routine, and repetitive tasks. The claimant should use a cane for ambulation but retains the ability to carry small objects with his free hand.

(T. 1336.)

Typically, the law of the case would bar relitigation of previously decided issues such as Plaintiff's RFC.  However, "cogent and compelling" reasons exist in this case to excuse ALJ Smith's departure from Judge Scullin's instructions. To begin with, the Appeals Council consolidated Plaintiff's two pending applications for benefits, expanding the time period under review. (T. 1472.)  The consolidated applications included additional treatment notes that were not available at the time of ALJ Smith's August 2019 disability determination. (T. 2225-2375.) This included a December 2022 treating source opinion addressing the functional limitations imposed by Plaintiff's back pain. (T. 2373-2375.)  The ALJ was obligated to review such evidence.  *See Tanya W.,* 2021 WL 4942092, at *7 ("a claimant is free to introduce new evidence to support her disability claim, which the ALJ is bound to evaluate according to the sequential

analysis"); *Marvin*, 2016 WL 2968051, at *3 (explaining an ALJ is not bound by the law of the case when presented with compelling reasons such as new evidence). At the January 5, 2023 hearing, Plaintiff's representative brought the updated treatment notes and new medical opinion to ALJ Smith's attention and raised no objection to her consideration of the new evidence. (T. 1360-1363.)

Crucially, Plaintiff has not demonstrated that the revised RFC determination was detrimental to him. *C.f. Parvon v. Comm'r of Soc. Sec.*, No. 18-CV-226-FPG, 2020 WL 1131220, at *5 (W.D.N.Y. March 9, 2020) (remanding where ALJ departed from prior RFC determination "in a way that made it substantially more difficult" to prove disability, suggesting "an improper attempt to justify, by whatever means necessary, a preordained conclusion that [plaintiff] was not disabled."). While Plaintiff makes the vague accusation that the revised RFC determination is less restrictive than the one presented to Judge Scullin, both ALJ Smith and VE Eng considered it to be more restrictive than the prior decision. (T. 1380.) In response to the revised RFC, VE Eng identified only three representative jobs that Plaintiff could perform, as compared to the six identified by VE Festa. (T. 1380.) On its face, the revised RFC dated January 20, 2023 appears generally more restrictive, because it contains greater limitations with regard to postural limitations, the length of time that Plaintiff can stand without changing positions, his need for a cane, and his exposure to environmental irritants.

Plaintiff concedes that the revision regarding environmental irritants likely had no impact on the range of available jobs. (Dkt. No. 16 at 20.) He takes greater exception to ALJ Smith's omission of "GED levels" in the revised RFC determination[2]. (Dkt. No.16 at 20; Dkt. No. 20 at

---

[2] General Education Development or "GED" levels "indicate the level of ability an individual needs to possess in the educational areas of Reasoning Development, Mathematical

16

8.)  However, this revision to the RFC determination appears reasonable based on the available evidence.  In August 2019, VE Festa provided a cautious[3] opinion regarding the GED levels required to perform Plaintiff's prior work, and the ALJ incorporated this opinion into the RFC. (T. 48-50.).  In January 2023, neither ALJ Smith nor Plaintiff's representative questioned VE Eng regarding GED levels. (T. 1375-1387.)  Instead, the ALJ relied on Plaintiff's own testimony that he "was good" in school, could read a newspaper, write, perform simple math, and had no difficulties learning how to operate a forklift at his prior job. (T. 1373, 1387.)

This Court also finds that ALJ Smith complied with the spirit of Judge Scullin's remand order by questioning VE Eng regarding the regional and local availability of the three jobs identified in her testimony. (T. 1377-1379.)  On cross-examination, Plaintiff's representative questioned VE Eng regarding the regional and local availability of the jobs identified by VE Festa under the previous RFC and considered by Judge Scullin, making those figures part of the record. (T.1384-1387.)

## VIII.  <u>SIGNIFICANT NUMBER OF JOBS</u>

### A.    **Legal Standards**

Although the claimant has the general burden to prove he has a disability under the definitions of the Social Security Act, the burden shifts to the Commissioner at step five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting

---

Development, and Language Development in order to be able to perform a certain occupation." *Vanbenschoten v. Comm'r of Soc. Sec.*, No. 1:16-CV-0057 (GTS), 2017 WL 1435741, at *2 (N.D.N.Y. Apr. 21, 2017).

[3] In response to ALJ Smith's questioning at the August 2019 hearing, VE Festa estimated the GED levels required to perform Plaintiff's prior work as a forklift operator and order picker. (T. 47-50.)  VE Festa warned that, "to be fair, the only real assessment that, that I would certainly rely on would be a vocational evaluation, 'cause that would clarify exactly the GED level in regards to his functional abilities." (T. 50.)

*Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012) (internal quotation marks omitted)).

To meet this burden, the ALJ evaluates whether the claimant could perform jobs existing in

significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g); 404.1560(c). "Work

which exists in the national economy means potential jobs that exist in significant numbers either

in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423.

Neither the Act nor applicable regulations define 'significant numbers,' however, and the Second

Circuit has not "'set any bright line rule regarding the number of jobs needed to satisfy the

Commissioner's burden at step five.'" *Spellman v. Comm'r of Soc. Sec.*, No. 2:21-CV-05842

(SIL), 2023 WL 5350845, at *12 (E.D.N.Y. Aug. 21, 2023) (quoting *Maldonado v. Comm'r of*

*Soc. Sec.*, No. 21-CV-7594, 2023 WL 243617, at *10 (S.D.N.Y. Jan. 18, 2023)).

"Courts have generally held that what constitutes a 'significant' number is fairly

minimal." *Fox v. Comm'r of Soc*. Sec., No. 6:02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y.

Feb. 13, 2009). Thus, many courts have held that national economic totals around 10,000 jobs to

be sufficiently "significant" to meet the Commissioner's burden and have remanded decisions for

further proceedings where ALJs found national economy job numbers below the 10,000-job

mark to be "significant." *Annemarie B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-129 (FJS/CFH),

2024 WL 758821, at *6 (N.D.N.Y. Feb. 5, 2024), *report and recommendation adopted*, 2024

WL 756942 (N.D.N.Y. Feb. 23, 2024) (collecting cases). This Court looks to such decisions for

guidance on what constitutes a significant number of jobs. *See Roe v. Colvin*, No. 1:13-CV-

1065, 2015 WL 729684, at *7 (N.D.N.Y. Feb. 19, 2015) (630 jobs locally and 44,000 nationally

was significant); *McCusker Comm'r of Soc. Sec.*, No. 1:13–CV–1074 (GLS), 2014 WL 6610025,

at *3 (100 jobs in the Capital Region; 2,250 in New York State, and 74,470 nationally was

significant); *Gray v. Colvin*, No. 12-CV-6485, 2014 WL 4146880, at *6 (W.D.N.Y. Aug. 19,

2014) (60 jobs regionally, over 16,000 nationally was significant); *Barbato v. Astrue*, No. 09-CV-6530T, 2010 WL 2710521 at *7 (W.D.N.Y. July 7, 2010) (finding that significant numbers include 408 jobs in the regional economy and 98,008 jobs in the national economy; and 180 jobs in the regional economy and 40,027 jobs nationally); *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987) (174 jobs in the local economy, 1600 in the state, and 80,000 in the national economy were significant); *Dumas v. Schweiker*, 712 F.2d 1545, 1549, 1553-54 (2d Cir. 1983) (150 jobs in the local economy and 112,000 in the national economy were significant numbers);

### B.    Application

Plaintiff's consolidated applications for SSI benefits have been under administrative or judicial review since December 2016. (T. 286-292.)  During that nearly eight year period, the applications have been the subject of five administrative hearings and two judicial proceedings. (T. 32-98, 1357-1390, 1878-1894.)  While these applications were pending, Plaintiff reached the age of fifty and qualified as disabled from that date in light of his restrictive RFC. (T. 1345.)  Thus, the dispute at the heart of this proceeding is limited to Plaintiff's disability status for the period between July 28, 2016 and March 1, 2022.

The administrative record before this Court totals 2375 pages. (Dkt. Nos. 13, 13-1.)  That record includes testimony from three different vocational experts. (T. 46-57, 84-89, 1375-1387.)  At the end of this lengthy process, ALJ Smith relied upon VE Eng's testimony to conclude that an individual with Plaintiff's RFC could perform the representative occupations of addresser (13,000 jobs nationally, 1720 jobs in New York State, and 860 jobs in the Syracuse area), document preparer (28,000 jobs nationally, 18,500 jobs in New York State, and 4,000 jobs in the Syracuse area), and polisher (1200 jobs nationally, 800 jobs in New York State, and 20 jobs in the Syracuse area). (T. 1344, 1377-1379.)

Numerous courts have found the positions of "addresser" and "document preparer" to be obsolete. *See Mark P.O. v. O'Malley*, No. 5:23-CV-00186 (MAD), 2024 WL 1219632, at *8-9 (N.D.N.Y. March 20, 2024) (collecting cases). As one jurist described it:

> The definition for document preparer refers to preparing documents for microfilm, a lost art perhaps still practiced by a few Luddites and anachronistic librarians . . . Similarly, the definition for addresser refers to literally addressing items for mailing by hand or typewriter, which fails to account for minor recent inventions such as the computer and the internet . . . .

*Pamela H. v. Kijakazi*, No. 5:20-CV-00304 (NAM), 2021 WL 4307457, at *6 (N.D.N.Y. September 22, 2021). Of course, neither of these obsolete positions constitute substantial evidence of jobs existing in the national economy that Plaintiff can perform. *See Zacharopoulos v. Saul*, 516 F. Supp. 3d 211, 225 (E.D.N.Y. 2021) (collecting cases finding VE testimony regarding obsolete jobs does not constitute substantial evidence to support a step five determination); *see also Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014) ("If the only jobs that the applicant is physically and mentally capable of doing no longer exist in the American economy (such as pin setter, phrenologist, leech collector, milkman, pony express rider, and daguerreotypist), the applicant is disabled from working, and likewise, as a realistic matter, if there is an insignificant number of such jobs.").

The third position listed by ALJ Smith, polisher,[4] is not obsolete.[5] However, the job figures provided by VE Eng fall well below what are typically considered significant numbers at

---

[4] This position, fully titled "Polisher, Eyeglass Frames" involves polishing plastic eyeglass frames and temple pieces to remove scratches and pit marks, using a polishing wheel; applying abrasive compound to the wheel surface, using a brush; starting a machine and holding and turning frame parts against the wheel to polish parts and remove defects; inspecting and feeling polished parts to verify removal of flaws; and pressing sandpaper against the polishing wheel to remove abrasive residue. *See* DICOT 713.684-038, 1991 WL 679267.

[5] That is not to say that the job estimates from VE Eng, in which two-thirds of the 1200

the national, regional, or local level. (T. 1378-1379.)  Recognizing this defect, the Commissioner

contends that the case should be remanded for further administrative proceedings because

additional VE testimony may disclose other representative occupations that actually exist in

significant numbers. (Dkt. No. 19-1 at 8.)  If this were the first judicial remand, the

Commissioner would have a compelling argument.  *See, e.g.*, *Annemarie B. v. Comm'r of Soc.*

*Sec.*, 2024 WL 758821, at *6 (N.D.N.Y. Feb. 5, 2024) (recommending remand for further

administrative proceedings where it served the "useful purpose" of determining whether there

were other jobs that plaintiff could perform based on her RFC).  However, the Commissioner's

contention appears wholly speculative in light of the lengthy procedural history of this case,

including extensive VE testimony, and the Commissioner's repeated failure to meet the burden

of proof. *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 421 (W.D.N.Y. 2006) (remanding for

calculation and payment of benefits where "[t]he Commissioner has already had one opportunity

to correct the errors that occurred in connection with the first hearing, and has failed to do so; in

fact, the ALJ committed the exact same errors the second time around.")  Accordingly, this Court

recommends remand for calculation and payment of benefits as the appropriate remedy. *See*

*Virginia D. F. v. Comm'r of Soc. Sec.,* No. 5:21-CV-720 (GLS/CFH), 2022 WL 4652361, at *26

(N.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4619873 (N.D.N.Y.

Sept. 30, 2022) (remanding for calculation and payment of benefits where the "same errors have

persisted" over the course of multiple decisions).

    Although remand for calculation and payment of benefits is generally disfavored, a

number of factors support this Court's recommendation of the remedy in this case.  The highly

restrictive RFC determination and low number of jobs that have been identified despite multiple

nationwide polisher jobs are located in New York State, appear particularly reliable. (T. 1379.)

hearings provide persuasive proof of disability and show that further development of the record

would not serve any useful purpose.  *See* SSR 96-9p, Titles II and XVI: Determining Capability

To Do Other Work—Implications of a Residual Functional Capacity for Less Than a Full Range

of Sedentary Work, 61 FR 34478-01 ("An RFC for less than a full range of sedentary work

reflects very serious limitations resulting from an individual's medical impairment(s) and is

expected to be relatively rare.").  The difficulty in identifying jobs that corresponded to

Plaintiff's functional limitations was evident to ALJ Smith in the very first hearing on October 9,

2018. (T. 86-87.)  As Judge Scullin noted, ALJ Smith "pressured" VE Howell by telling her that

"she was "gonna need a few more [jobs] 'cause [she has] to get up to 10,000." (T. 86, 1466.)  VE

Howell ultimately identified five sedentary occupations that in the aggregate totaled just 12,395

jobs nationally. (T. 87.)  By August 8, 2019, the aggregate number of jobs available across the

six representative sedentary occupations identified by VE Festa fell to 11,130. (T. 22, 51-55.)

On January 5, 2023, VE Eng could only identify 1200 jobs nationally that Plaintiff could

perform, once her unrealistic estimates for obsolete positions are excluded.  *See Zacharopoulos*,

516 F. Supp. 3d at 222 (referring to VE's estimate of 25,000 document preparer jobs nationally

as "fundamentally irrational" and straining credulity).

Thus, further administrative hearings are unlikely to reveal previously undisclosed jobs

existing in significant numbers that Plaintiff can perform in light of his highly restrictive RFC

and would only further delay a process that has gone on for almost eight years.  *See Peach v.*

*Berryhill*, No. 1:17-CV-00201 (MAT), 2018 WL 4140613, at *5 (W.D.N.Y. August 30, 2018)

(finding persuasive evidence of disability where the Commissioner repeatedly failed to meet its

burden at step five); *Torres v. Colvin*, No. 3:16-CV-00809 (JAM), 2017 WL 1734020, at *4 (D.

Conn. May 3, 2017) ("Plaintiff's claim has been pending for more than seven years and was

already remanded by the District Court once before. I am not persuaded that the Commissioner deserves a third opportunity to carry her burden" at step five.).  In the absence of reliable, realistic, and significant job numbers, Plaintiff qualifies as disabled for the relevant period of July 28, 2016 through March 1, 2022, and is entitled to disability benefits.  *See Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (remanding for calculation and payment of benefits where there was an "infinitesimal likelihood that employment of any kind would be available" to claimant).

Other remedies on remand, such as an expedited timeline for further proceedings or transfer to a different ALJ, would not change the outcome. *See, e.g., Michaels v. Colvin*, 621 F. App'x 35, 41 (directing Commissioner to conduct hearing on outstanding step five issues within 120 days of the remand order); *Thomas T. on behalf of E.G.T. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1225 (BKS/DEP), 2023 WL 2049526, at *6 (N.D.N.Y. Jan. 31, 2023), *report and recommendation* 2023 WL 2048560 (N.D.N.Y. Feb. 16, 2023) (citing cases where "a fresh look by another ALJ . . . would be beneficial").  Therefore, this Court recommends remand for calculation and payment of benefits as the appropriate remedy to resolve this case.

**ACCORDINGLY**, it is

**RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 16) be **GRANTED**; Defendant's motion for remand (Dkt. No. 19) be **DENIED** to the extent that it seeks further administrative proceedings and that the matter be **REVERSED AND REMANDED** to the Commissioner for the calculation and payment of benefits for the period of July 28, 2016 through March 1, 2022.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE**

**APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated:   July 8, 2024
         Binghamton, NY

Miroslav Lovric
U.S. Magistrate Judge

24